**In the Matter of LANCE, INC., dba Thunderbird Hotel, Debtors, Appellant,**

v.

**DEWCO SERVICES, INC., et al., Creditors, Appellee.**

No. 24029.

United States Court of Appeals, Ninth Circuit.

Feb. 13, 1970.

---

John Peter Lee (argued), Las Vegas, Nev., for appellant.

Samuel S. Lionel (argued), of Lionel & Sawyer, Robert Callister, Las Vegas, Nev., for appellee.

Before MADDEN*, Judge of the United States Court of Claims, and HAMLEY and ELY, Circuit Judges.

J. WARREN MADDEN, Judge.

This is an appeal from a final order of the United States District Court for

---

* Senior Judge, United States Court of Claims, sitting by designation.

the District of Nevada. The Court's order affirmed, on review, the findings of fact, conclusions of law and judgment of the Court's Referee in Bankruptcy. The Referee's action had granted to the appellee, Dewco, leave to foreclose a certain trust deed. No question is raised in this appeal, with regard to the jurisdiction of the Referee, the District Court, or this Court.

The appellant Lance, Inc. dba Thunderbird Hotel, is a petitioner in a Chapter XI bankruptcy proceeding. On May 1, 1967, Lance purchased the Thunderbird Hotel located in Las Vegas, Nevada, from the appellee Dewco Services, Inc., which is a subsidiary of the Del Webb Corporation, for $13,000,000. In that purchase, Lance paid cash in the amount of $1,150,000, assumed two existing trust deeds, approximating $7,560,000, and executed a third trust deed in the amount of $3,863,407.87, on the property. This appeal is concerned with the foreclosure by Dewco of that third trust deed.

In October, 1967, Lance was in financial difficulties and obtained from Dewco a moratorium on the note secured by the third trust deed mentioned above. Under the moratorium no payments were to be made on the third trust deed until June 1, 1968, but Lance was to make payments on the two prior trust deeds which it had assumed, and make various other payments, and the moratorium was expressly conditioned upon the making of these other payments by Lance. Lance was unable to make these other payments and on December 5, 1967, a writing entitled "Consent and Waiver" was executed by Lance and Dewco. It provided that unless the stockholders of Lance made certain funds available, Lance would not be able to operate the hotel and Dewco would have no alternative except to declare Lance in default under the terms of the third trust note, and Dewco could take possession of the hotel on December 11, 1967. Lance's stockholders refused to make the necessary funds available, Lance and Dewco joined in an application to the Nevada Gaming authorities for permission for Dewco and Consolidated Casinos Corporation, a lessee of Dewco, to take over the hotel and its Casino. The Gaming Commission granted the application, and the take-over occurred on December 11, 1967.

On December 14, 1967, Dewco recorded a "Notice of Breach and Election to Sell" under its third deed of trust.

On January 25, 1968, an involuntary petition in bankruptcy was filed against Lance by some of its creditors. In lieu of an answer to this petition Lance filed on February 5, 1968, a Petition in Proceedings for an Arrangement under Chapter XI.

On January 26, Lance had filed a petition for an Order to Stay Suits. On February 1, 1968, an Order Restraining Creditors restraining all sales of Lance's property was issued by the referee.

On March 22, 1968, Dewco filed a Petition for Leave to Foreclose Trust Deed. An Order to Show Cause was issued. On April 29, Lance filed its answer to the Petition for Leave to Foreclose. Hearings were held on five days in April, May and June, and oral arguments were heard and on June 18, the Referee filed his Memorandum Opinion in which he held that Dewco should be permitted to foreclose. Findings of Fact and Conclusions of Law were filed on the same day, June 18. Lance petitioned for review by the District Court. On February 5, 1969, the District Court affirmed the Referee's decision.

The appellant Lance in its "Statement of the Issues" urges, (1), that the District Court erred in not holding that some of the findings made by the Referee were clearly erroneous; (2) in finding that Lance, the debtor, was in default on December 14, 1967, when Dewco's notice of breach and election to sell was recorded, and (3) in holding that, in the circumstances, it would have been inequitable not to permit Dewco to foreclose its deed of trust.

The first two items in Lance's "Statement of the Issues" may be dis-

cussed together, since they both relate to the question of whether Lance was in default on its third deed of trust, at the time that Dewco filed its notice of breach and election to sell. Under the applicable Nevada statute a debtor has 35 days, after the recording of the notice of default, in which to make good his deficiency in performance or payment. The date of the notice of default was December 14, 1967, and Dewco's list of Lance's obligations to Dewco then in default added up to $228,974.20. Lance says that before and within the 35 day period of grace Dewco took assets of Lance of the value of $576,147.73 and that Lance was, therefore, not in default. There are two weaknesses in Lance's argument. One is that a large proportion of the items which Dewco took over with the hotel on December 11, 1967, were items of uncertain value such as I.O.U.'s, or "markers", received by Lance from third persons in the operation of the hotel's casino, and on which items Dewco, even as long after the 35 days grace period as April 29, 1968, had collected only a minor fraction of their face value. The other weakness in Lance's claim that the miscellaneous items taken over by Dewco on December 11 should be set off against Lance's default on the deed of trust involved in this litigation is that all of those items had been pledged as collateral to a bank to secure a loan of $277,500, which collateral inured to Dewco when it was required to pay that debt to the bank on December 12, 1967. The miscellaneous items of property which Dewco took over from Lance were thus not available to be credited by Lance against its defaults in its payments on the third deed of trust.

■ The referee made a finding that Lance was in default on December 14, 1967, when the Notice of Breach and Election to Sell was recorded. Since the items which Lance seeks to set off against the amount of its default had passed into Dewco's hands before December 13, i. e. on December 11, the referee's finding, well supported by the evidence, is that the possession of these miscellaneous items by Dewco was not relevant to Lance's default on its deed of trust.

Lance argues that the District Court erred in holding that it would have been inequitable not to permit Dewco to foreclose its deed of trust. It would be impossible to imagine a more confusing and financially perilous situation than that of Dewco, the secured creditor in possession, in the existing circumstances. The large real property with its hundreds of employees and its complex equipment had to be maintained as a going concern to prevent irreparable loss. The payments on the two prior deeds of trust had to be made to prevent foreclosure. The referee found that Dewco, since retaking possession, had sustained losses of $400,000 in the operation of the property; that it had been required to advance more than $1,-000,000 in order to keep the premises operating and prevent defaults. The necessity for such advances is a continuing one and will continue as long as the property is in its present indefinite status. One who by his foresight and prudence is a secured creditor, who has a lien upon property rather than the mere general obligation of a debtor, deserves, and has, a better legal status than that to which Lance would have us relegate Dewco in this case.

Lance urges that the purpose of further delay in clarifying the status of Dewco would be to give Lance more time to achieve a Plan of Arrangement under Chapter XI of the Bankruptcy Act. The referee made the following finding:

> That on April 29, 1968, and while Dewco Services, Inc's Petition for Leave to Foreclose was pending, Debtor filed a Plan of Arrangement. That plan is not feasible and is wholly speculative.

The referee's finding is not assigned as error by Lance and is fully supported by the evidence.

Collier on Bankruptcy, 14th Ed. Vol. 8, p. 26 says:

    \* \* \* since the secured claim cannot be affected by the arrangement, it seems that stronger ground should be required to stay a lien or in a Chapter XI case than would be required in a proceeding under former Section 77B or under present Chapter X, and it should particularly be shown the stay will cause no substantial injury to the lienor.

See In re Tracy, 194 F.Supp. 293, 295 (N.D.Cal.1961):

In arriving at his conclusion that Lance's Chapter XI Plan was not feasible and was wholly speculative, the Referee found that the amount owed on the secured incumbrances exceeded the value of the property, and that Lance had no equity in the property. This conclusion was adequately supported by the evidence.

▪ We hold that, in the circumstances it would have been inequitable for the Referee and the District Court to have refused to grant Dewco's Petition for Leave to Foreclose Trust Deed.

On the merits, our decision is in favor of the appellee Dewco.

The Procedural Questions.

On June 27, 1968, nine days after the Referee had signed his Findings of Fact, Conclusions of Law and Judgment, Lance filed its Petition for Review of the Referee's Judgment, expressly calling into questions the propriety of the Referee's Findings of Fact and Conclusions of Law. On October 2, 1968, the Referee filed his Referee's Certificate on Petition to Review. On November 4, Lance filed its Points and Authorities in Support of Petition for Review. On November 20, Dewco filed its Reply Memorandum of Points and Authorities. On November 21, the District Judge took the review under submission. On January 21, 1969, before the District Judge had made any ruling on Lance's Petition for Review, Lance filed in the District Court a motion for an order granting relief from the Referee's Judgment, under Federal Rule of Civil Procedure 60(b). The contents of Rule 60(b), as shown in its heading comprise "Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc."

The motion just referred to is the basis for the problem which we shall now discuss. In the motion Lance asserted that the Referee's Findings, Conclusions and Judgment were proposed by Dewco and entered by the Referee in direct disregard of the local rules of the District Court, which local rules provided Lance an opportunity to either approve the proposed Findings, Conclusions and Judgment, or to object to them and have its objections considered. Lance presented Points and Authorities in support of its motion, and Dewco presented its opposition to the motion.

The District Judge did not, at least expressly, rule upon Lance's motion. On February 13, 1969, the court denied Lance's Petition for review of the Referee's Judgment, entered its Order Affirming the Referee, and advised Lance, by letter, of the Court's action. Lance, logically, it seems to us, treats the Court's action of affirming the Referee's Judgment, when the Court had before it Lance's Motion under F.R.Civ.P. 60(b), as a *sub silentio* denial of the motion. Dewco expressly assents to this interpretation of the meaning of the District Court's action.

In this Court Lance attacks as reversible error the District Court's denial of Lance's F.R.Civ.P. 60(b) motion. Lance points out that the local rules of the District Court for the District of Nevada, in Rule 105(b) provide:

    In all adversary proceedings (before a Referee), unless the court otherwise directs, counsel for the prevailing party shall prepare, serve and submit findings of fact, conclusions of law, and order, in accordance with Rule 15 of this Court.

    Rule 15(a) provides:

    All proposed findings, conclusions of law, judgments and decrees and all orders affecting title to or creating or

affecting a lien upon real or personal property, all appealable orders and such other orders as the Court may direct shall be prepared in writing by the attorney or attorneys for the successful party, unless the judge shall order otherwise; and the same shall embody the court's decision.

In the case of orders, judgments or decrees, in the space to the right of the title of the cause and under the number of the cause, counsel shall show the substance of the order, decree or judgment as he desires it entered in the civil docket by the clerk as required by FRCP, Rule 79(a).

No document governed by this rule shall be signed by the judge unless opposing counsel shall have endorsed thereon an approval as to form, or shall have failed to file with the judge, within five days from the time of the receipt of a copy thereof, as such time is shown on the original or by affidavit of service, a written detailed statement of the objections thereto and the reasons therefor.

Local rules such as Rules 15(a) and 105(b) of the District Court for the District of Nevada are expressly authorized by Rule 83 of the F.R.Civ.P. which provides, in pertinent part:

> * * * each district court * * * may from time to time make and amend rules governing its practice not inconsistent with these rules * * * In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules.

In the instant case, Dewco, the successful party in the proceedings before the Referee, prepared findings, conclusions of law and the judgment and submitted them to the Referee. On the same day, June 18, 1968, the Referee signed these documents so submitted by Dewco. Dewco did not comply with the requirements of Local Rule 15(a) about obtaining opposing counsel's endorsement of approval as to form, or of supplying opposing counsel a copy of the documents. The Referee did not comply with the requirement of the same Rule that he should not sign the documents unless they were approved as to form by opposing counsel or opposing counsel had failed, for five days after notice to him, to file objections to the proposed documents. The Referee instead, as we have seen, signed the documents on the day they were submitted, and on that same day, June 18, 1968, Dewco held its foreclosure sale and "bid in" the property.

Our problem is to determine the effect, if any, of the alleged procedural irregularities adverted to above. It will be remembered that it is not claimed by Lance that any provisions of the F.R. Civ.P., as such were violated. The only direct relation of the F.R.Civ.P. to this case is that Rule 83 of the F.R.Civ.P. authorizes District Courts to make rules governing their practice, not inconsistent with the F.R.Civ.P. As we have seen, the District Court here involved had made such Local Rules, including Local Rules 105(b) and 15(a). As to the question whether the Local Rules were in fact violated, Dewco points to the text of Local Rule 105(b) which reads:

> In all adversary proceedings (before a referee) *unless the Court otherwise directs*, counsel for the prevailing party shall prepare, serve and submit findings of fact, conclusions of law, and order, in accordance with Rule 15 of this Court. (Italics added).

When the tribunal which has promulgated a rule has interpreted and applied the rule which it has written, it is hardly for an outside person to say that the author of the rule has misinterpreted it. The Referee or the Court could, under the Court's own rule, or under its F.R.Civ.P. Rule 83 power to make rules, have directed that Rule 15 should not apply in Lance's case. When the Referee accepted the documents from Dewco and proceeded to act on them without complying with Local Rule 15(a) that may well have been his decision to "otherwise direct" as permitted by Local Rule 105(b). We do not decide

that under no circumstances would a Local Rule be treated as having binding effect upon the court which issued it. But we do think that Local Rules are promulgated by District Courts primarily to promote the efficiency of the Court, and that the Court has a large measure of discretion in interpreting and applying them.

■ Lance says that the departure here involved, from the applicable rules, rendered the purported judgment void. But the violation of a rule of procedure does not deprive a court of jurisdiction and thereby make its judgments and orders void. Yanow v. Weyerhaeuser Steamship Company, 274 F.2d 274, 280 (CA 9, 1959). See also Union Joint Stock Land Bank v. Byerly, 310 U.S. 1, 7, 8, 60 S.Ct. 773, 84 L.Ed. 1041 (1940), United States v. Borchers, 163 F.2d 347, 349 (2d Cir. 1947).

■ More significant and substantial than what we have said above concerning the procedural question, is the inquiry as to what would be accomplished by now granting Lance's Motion of January 21, 1969, for an order under F.R. Civ.P. 60(b) granting relief from the Referee's Judgment of June 18, 1968. Dewco would have to prepare new Findings, Conclusions of Law and Judgment, and submit them to Lance for approval as to form or for the filing within five days of a written detailed statement of the objections thereto and the reasons therefor. Lance does not now urge that there would have been any objection as to form. As to other objections which might have been made within the five day period, the objections would have been the same objections which are now made, and which are the subject of the instant appeal on the merits of the case, viz. that the judgment was wrong for various stated reasons as to which, we have concluded, in the portion of this opinion dealing with the merits, that the judgment was not wrong.

An acting out at this stage of this extended proceeding, of the procedural steps which Lance claims, in its motion pursuant to F.R.Civ.P. 60(b) were erroneously omitted, would be a wasteful exercise in futility. There was a fair trial, and a full opportunity for appellate review.

The judgment of the District Court is affirmed.

The mandate shall issue forthwith.