Deep **AGGARWAL**, Plaintiff, Appellant,

v.

**PONCE SCHOOL OF MEDICINE,**
Defendant, Appellee.

No. 84–1163.

United States Court of Appeals,
First Circuit.

Argued Sept. 5, 1984.

Decided Oct. 4, 1984.

Luis A. Gonzalez Perez, Santruce, P.R., with whom Woods, Woods & Mayo, Santruce, P.R., was on brief, for plaintiff, appellant.

Charles R. Cuprill, Ponce, P.R., with whom Hector R. Cuprill, Ponce, P.R., Jose E. Otero, Oscar Davila Suliveres, Victor M. Caparros Cabrera, Hato Rey, P.R., and Luis G. Estades, hijo, San Juan, P.R., were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BREYER. Circuit Judge, and SELYA,[*] District Judge.

SELYA, District Judge.

The appellant, Deep Aggarwal, formerly toiled in the academic vineyards of the appellee, Ponce School of Medicine (PSM), as an associate professor of physiology. Somewhere along the way, the seeds of discontent were sown; and, in early May of 1981, PSM notified Dr. Aggarwal that his services would no longer be required after July 31, 1981. That separation from service took place as scheduled.

Dr. Aggarwal fled to Wisconsin, mulled over his plight at some length, and eventually decided that he would not permit PSM to plow him under without a struggle. This decision fructified in August of 1983, when Dr. Aggarwal filed suit in the United States District Court for the District of Puerto Rico. His complaint invoked that court's diversity jurisdiction, 28 U.S.C. § 1332, and sought money damages aggregating $500,000 for breach of contract. Simultaneous with the filing of its answer, PSM moved pursuant to Rule 5 of the Local Rules of the District of Puerto Rico to require the appellant to post bond. Since this rule is central to the matters here at issue, its full text follows:

> When the plaintiff is domiciled outside of Puerto Rico or is a foreign corporation, a bond shall be required to secure the costs, expenses and attorneys' fees which may be awarded. All proceedings in the action shall be stayed until bond is given, which shall not be less than five

[*] Of the District of Rhode Island, sitting by designation.

hundred dollars (500.00). The Court may require an additional bond upon a showing that the original bond is not sufficient security, and stay the proceeding in the action until such additional bond is given.

After the lapse of ninety (90) days from the service of the order requiring bond or additional bond, without the bond having been given, the Court may dismiss the action.

This rule shall be liberally interpreted in favor of the plaintiff so as not to preclude his right to sue through excessive bond requirement. Consistent with this, the Court, for good cause shown, may dispense with this requirement.

It is beyond cavil that the appellant, who claimed in his complaint to be "domiciled and residing in the state of Wisconsin," was—and remains—within the reach of D.P.R.L.R. 5.

On October 5, 1983, before Dr. Aggarwal had responded to the Rule 5 motion and prior to the expiration of the time for so doing, see D.P.R.L.R. 8(F), the court granted PSM's request. While the motion was silent as to any proposed principal amount for the bond, the district judge took note of the ad damnum contained in the complaint, and wrote in pertinent part:

> ... Using the amount claimed and the nature of the claim as a yardstick, the court must determine the bond to be posted in order to reasonably protect the interest of defendants [sic]. The bond is placed at $5,000.00 which is to be posted within 30 days from date hereof, or otherwise the complaint is to be dismissed.

Dismayed by the bitter fruit of this unwanted harvest, the appellant seasonably pressed for relief from the order. Dr. Aggarwal contended that the practical effect of the bond requirement was to deprive him of any judicial remedy, and implored the court to exempt him from posting the mandated security by reason of his impecunity. Dr. Aggarwal attached to his motion an affidavit which recited in substance that he had been out of work since July of 1981; that his only income was a monthly gratuity ($200) from his relatives in India; that his valiant (albeit unspecified) efforts to find gainful employment had been uniformly unavailing; and that his present checking account balance was roughly $350. The record before us reflects no stated opposition to this motion. Yet, the parties agree that it was orally denied at a Fed.R. Civ.P. 16 status/scheduling conference held before the district court on November 22.

In early December, Dr. Aggarwal again moved for relief vis-a-vis the bond. He reiterated his plea of poverty; expressed his "particular[ ] interest" in continuing the prosecution of the case; and averred that he had "made every effort possible to obtain the sum required as bond, but due to his extremely limited financial resources" had come up empty. PSM filed a formal opposition to this motion, in which it stalwartly defended the propriety of the bond. But, PSM did not in any way controvert or cast doubt upon the appellant's description of his straitened circumstances. The district court responded in January of 1984 by a written order in which it both denied Dr. Aggarwal's latest imprecation and dismissed the action for noncompliance with the October 5 surety decree. In so doing, the district judge concluded:

> [T]he Court finds that plaintiff has no attachable property in Puerto Rico and his likelihood of success on the merits is tenuous. The bond was set at 1% of the amount claimed in the complaint and, considering the length, complexity, and cost of this suit, plaintiff's failure in posting a non-resident bond renders this case as DISMISSED.

No finding was made upon, nor any comment addressed to, Dr. Aggarwal's allegations of impoverishment.

Judgment was entered in favor of PSM on January 31, 1984. The appellant promptly moved pursuant to Fed.R.Civ.P. 60(b)(6) for relief from the judgment. Dr. Aggarwal challenged the district court's assessment of his chances of success on the merits, and again displayed the tatterdemalion banner of impecunity. He characterized the bond amount as "excessive"

in relation to his meagre resources and questioned the constitutionality of so draconian an application of D.P.R.L.R. 5. PSM's objection, filed on February 17, 1984, did not contest (or even touch upon) Dr. Aggarwal's financial condition. The record before us is devoid of any indication of judicial action below on this motion, presumably because an appeal was taken from the judgment of dismissal, also on February 17, 1984.

■ This court has, in the not too distant past, had occasion to consider the constitutionality of D.P.R.L.R. 5 on its face, and has held it harmless against such a challenge. *Hawes v. Club Escuestre El Comandante*, 535 F.2d 140, 144–45 (1st Cir. 1976). And, we have likewise determined that the promulgation and perpetuation of Local Rule 5 was a proper exercise of the power ceded to the district courts by Congress, *see* Fed.R.Civ.P. 83, to design and implement idiocratic procedural rules. *Hawes*, 535 F.2d at 143–44. There is nothing in the case before us which in any way signals the need for a retreat from the twin holdings of *Hawes*. Indeed, as we observed at that time:

> Even in the absence of a standing local rule, a federal district court has the inherent power to require security for costs when warranted by the circumstances of the case.

*Id.* at 143. *See also McClure v. Borne Chemical Co.*, 292 F.2d 824, 835 (3d Cir. 1961).

But, *Hawes* was careful to note that the nondomiciliary plaintiffs in that case did not attack D.P.R.L.R. 5 as applied. *Hawes*, 535 F.2d at 145. *Hawes*, therefore, left open the possibility of ferment arising out of particular applications of the rule, warning that

> [T]he district court is under an obligation to evaluate each case individually, and to exercise its inherent discretion to apply the requirements of Rule 5 so as to facilitate a just and speedy disposition on the merits, as required by Fed.R.Civ.P. 1.

*Id.*

The instant case takes up, in a very real sense, where *Hawes* left off. The appellant's sortie is two-pronged: he claims that the imposition of substantial surety for costs upon one in his beggarly circumstances is an unconstitutional denial of equal protection and of access to the courts; and that, given the appellant's indigency, the judge abused the "inherent discretion" which *Hawes, id.,* directed the district court to exercise.

It has long been a basic tenet of the federal courts to eschew the decision of cases on constitutional grounds unless and until all other available avenues of resolution were exhausted. *Mills v. Rogers*, 457 U.S. 291, 305, 102 S.Ct. 2442, 2451, 73 L.Ed.2d 16 (1982); *Hagans v. Lavine*, 415 U.S. 528, 546–47, 94 S.Ct. 1372, 1383–84, 39 L.Ed.2d 577 (1974); *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 341, 347–48, 56 S.Ct. 466, 480, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). We have routinely followed such an approach. *E.g., In re Justices of the Supreme Court of Puerto Rico*, 695 F.2d 17, 22 (1st Cir.1982). Indeed, to look the other way would be "gratuitously to hold a farthing candle to the sun." *Lopez v. Bulova Watch Co.*, 582 F.Supp. 755, 762 (D.R.I.1984). Mindful, then, of this prudential precept, we turn first to a consideration of the argument that the district judge, by imposing a $5,000 bond requirement in this case, overstepped the encincture of his discretion.

■ We are aware that the question of security for costs is procedural in nature, *Hawes*, 535 F.2d at 143 & n. 3, and that a trial court's discretion in administering procedural matters—even those which may arguably affect substantive rights—is wide. *Id.* at 143–44. *See Smith v. Ford Motor Co.*, 626 F.2d 784, 796 (10th Cir.1980), *cert. denied*, 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981); *United States v. Simmons*, 476 F.2d 33, 35 (9th Cir.1973); *Lance, Inc. v. Dewco Services*, 422 F.2d 778, 783–84 (9th Cir.1970). But discretion, as the term implies, necessarily speaks to degrees, not to absolutes. And, it has regularly been recognized that limits upon the

exercise of such judicial discretion do obtain. *E.g., Wirtz v. Hooper-Holmes Bureau, Inc.,* 327 F.2d 939, 943 (5th Cir.1964) ("It is also true that a district court may abuse its authority and discretion in the application and enforcement of local rules, which are otherwise valid."). *See also Farmer v. Arabian American Oil Co.,* 285 F.2d 720 (2d Cir.1960). As Chief Judge Magruder remarked some three decades ago:

"Abuse of discretion" is a phrase which sounds worse than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. One is reminded of the "clearly erroneous" standard in Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.

*In re Josephson,* 218 F.2d 174, 182 (1st Cir.1954).

The cask which encases a judge's discretion, though commodious, can be shattered when a reviewing tribunal is persuaded that the trial court misconceived or misapplied the law, or misconstrued its own rules. *Smith,* 626 F.2d at 796; *Farmer,* 285 F.2d at 722–23. It is this strain which nourishes the appellant's argument. He contends, at bottom, that the district court, in ignoring the uncontradicted evidence as to Dr. Aggarwal's broken fortunes, misconceived the applicable legal standard in setting the surety sum.

In the matter at bar, the district court's determinations (i) that the claim asserted was of dubious worth, and (ii) that, because of Aggarwal's itinerant status and dearth of assets in Puerto Rico, PSM had a cogent need for meaningful security,[1] cannot readily be contested. This is peculiarly so in this case, given the lower court's broad discretion and the skimpiness of the record before us. Yet, these findings comprise, at best, two-thirds of the equation. They omit entirely any reference to the appellant's means.

In finding D.P.R.L.R. 5 valid per se, we noted that Rule 5 must be read as being subject to the strictures of 28 U.S.C. § 1915(a), the text of which is excerpted in the margin.[2] *Hawes,* 535 F.2d at 143. Later in that opinion, in virtually the same breath in which we emphasized the district court's obligation "to evaluate each case individually," *id.* at 145, we reaffirmed the notion that "to require all foreign plaintiffs, as such, to post substantial security as a condition to access to the courts may well be an unconstitutional denial of equal protection." *Id.,* quoting *Coady v. Aguadilla Terminal Inc.,* 456 F.2d 677, 679 (1st Cir.1972). And, there is in this instance no necessity to engraft consideration of the nondomiciliary's financial status upon the rule by appellate fiat, as D.P.R.L.R. 5 itself directs the court to take this into account in the plainest of terms ("This rule shall be liberally interpreted in favor of the plaintiff so as not to preclude his right to sue through excessive bond requirement.").

In fine, D.P.R.L.R. 5 demands that the court construct an equation composed of at least three integers: (i) the degree of

---

**1.** Since the bond was set above the stated minimum, it would have been preferable for the court to have made somewhat more detailed findings as to the type and kind of "costs, expenses and attorneys' fees," D.P.R.L.R. 5, which foreseeably could have been awarded to PSM in the aftermath of this litigation, so as to buttress the selection of the $5,000 figure. The district judge's preliminary assessment of the merit (or better put, the lack thereof) of the suit, in juxtaposition with the availability under Puerto Rican law of counsel fees in favor of a prevailing defendant "[w]here a party has been obstinate," Rule 44.1(d), Puerto Rico Rules of Civil Procedure, 32 L.P.R.A. Appendix III (1979), combine in this case, however, adequately to explain the indemnity amount.

**2.** 28 U.S.C. 1915(a) provides in pertinent part:

Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor.

probability/improbability of success on the merits, and the background and purpose of the suit; (ii) the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective; and (iii) the reasonable extent of the security to be posted, if any, viewed from the nondomiciliary plaintiff's perspective. And just as factors such as the absence of attachable property within the district or the conduct of the parties may bear on a defendant's legitimate need for the prophylaxsis of a bond, so too, a plaintiff's ability to post surety for costs must weigh in the balance when the third figure of the equation is tabulated.[3] While it is neither unjust nor unreasonable to expect a suitor "to put his money where his mouth is," cf. In re Stump, 449 F.2d 1297, 1298 (1st Cir.1971) (per curiam), toll-booths cannot be placed across the courthouse doors in a haphazard fashion. The district court, in the exercise of its sound discretion, must settle upon an assurance which is fair in the light not only of the case itself and of the exigencies faced by the defendant, but also fair when illuminated by the actual financial situation of the plaintiff. The rule is a scalpel, to be used with surgical precision as an aid to the even-handed administration of justice, not a bludgeon to be employed as an instrument of oppression.

This formulation, we believe, captures the spirit of Farmer v. Arabian American Oil Co., supra, where the Second Circuit, on admittedly different facts and in an era when the value of the dollar had been subjected to considerably less erosion, set aside an order of the district court fixing a $6,000 nondomiciliary bond under a local

varietal of D.P.R.L.R. 5. Noting, as do we, that competing concerns are at play, the Second Circuit reversed for abuse of discretion. Judge Clark, for a unanimous panel, wrote in part:

> It is clear that possible loss of reimbursement for costs, should defendant eventually become so entitled, may annoy it, but cannot really prejudice it in its defense. On the other hand, plaintiff showed conclusively that he could not put up the 100% collateral required by surety companies before furnishing the bond. Truly were this order to stand it would go far in making the federal court a court only for rich litigants....

Farmer, 285 F.2d at 722.

In the case at hand, there is no history of the persistent pursuit of fruitless litigation by the appellant, nor any demonstrated track record of harassment or the like. Dr. Aggarwal repeatedly alleged that he was desirous of pressing what he visualized as a bona fide claim, but that he was financially helpless in the face of the sizable bonding requirement imposed by the district court. While the facts which he served up to support his conclusion of fiscal impuissance were somewhat sketchy, the point was plainly made. And, having been raised in a timely fashion, Dr. Aggarwal's protestations of impecunity (never denied by PSM) were not addressed by the district court.[4] This, we believe, was an abuse of discretion. The lower court should either have held an evidentiary hearing or demanded that more concrete proof of the appellant's economic health— say, a detailed financial statement or copies

---

**3.** In deference to the court below, it should be observed that Hawes, 535 F.2d at 144 (dicta), did set forth a partial listing of "pertinent factors for the district court to consider" in respect to the dollar amount of a Local Rule 5 bond; and failed to include among them specific reference to the state of the nondomiciliary plaintiff's exchequer. Yet, we believe that the requirement which we today impose is fairly implied in Hawes, e.g., id. at 145; and we note that in Hawes, unlike this case, the appellants "made no attempt to show that they are financially unable to post the amounts required by the district court." Id. at 144.

**4.** The appellee suggested, both in its brief and at oral argument, that the district court may well have chosen to disbelieve Dr. Aggarwal's claim of impoverishment, based on his retention of a distinguished law firm and on some indications in the papers of the case that the appellant commuted once or twice between Wisconsin and Puerto Rico. But, the district court made no findings of this sort. While we agree that these topics may be relevant to an overall inquiry into Dr. Aggarwal's mendicancy vel non, we decline PSM's invitation to indulge in the tea-leaf reading which its suggestion implicitly entails.

of his federal income tax returns—be produced. Given the tenor of D.P.R.L.R. 5, express findings should have been set forth to reflect that the court had weighed the plaintiff's finances and had interpreted the rule with the required liberality "so as not to preclude [plaintiff's] right to sue through excessive bond requirement." *Id.*

We are troubled, too, by the district court's reliance on an arbitrary percentage of the ad damnum as a suggested basis for establishing the principal amount of the bond. Modern litigation practices being what they are, the monetary demand which caps a plaintiff's complaint is likely to be sanguine at best—and more often than not, the merest of velleities. After all, the only requirement is that a pleader set forth "a demand for judgment for the relief *to which he deems himself entitled.*" Fed.R. Civ.P. 8(a)(3) (Emphasis supplied). In any event, the amount claimed by the plaintiff bears no necessary relationship to the "costs, expenses, and attorneys' fees," D.P. R.L.R. 5, which the defendant can expect either to incur or to recover: a suit upon a $1,000,000 promissory note is not likely to be ten times more expensive to defend than would be the case if the note were in the face amount of $100,000. Moreover, if the prayer for judgment was to dictate the amount of security to be posted, a nondomiciliary plaintiff could undercut the entire purpose of the local rule by the simple expedient of inserting in his complaint a modest demand; he would have nothing to lose, for it is firmly settled that the ad damnum does not constitute a ceiling of any sort on the plaintiff's recovery. *See, e.g., Morton Buildings of Nebraska Inc. v. Morton Buildings, Inc.,* 531 F.2d 910, 919 (8th Cir.1976) ("[T]he law clearly provides that a plaintiff is not strictly bound by the prayers for relief in the complaint ...."); *Farmer,* 285 F.2d at 722 n. 2; *Matarese v. Moore-McCormack Lines,* 158 F.2d 631, 633 (2d Cir.1946) ("[T]he demand for judgment does not limit the ... amount of the relief except in case of a judgment by default."). *See also* Fed.R.Civ.P. 54(c). From our vantage point, using such a conjectural figure as a basis for meaningful judicial action is fraught with peril, and ought to be avoided except where compelling reasons exist.

The payment assurance required of the appellant was, therefore, twice debauched: no evaluation was made of Dr. Aggarwal's ability to post bond, and undue reliance was placed upon the amount claimed in his suit. Since the district court in this case plucked the $5000 grape from the vine before it had ripened, we are constrained to remand so that the entire question of security can be reviewed in the proper context. The district court should vacate the bond previously set and reconsider the matter afresh.

*The judgment of the district court is vacated and the case is remanded to the district court for further proceedings consonant herewith.*