990 F.2d 1262
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Randall C. HAUSER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellant,
v.
Randall C. HAUSER, Defendant-Appellee.
 Nos. 91-30288, 91-30317.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1992.
Decided March 22, 1993.
 
 Before EUGENE A. WRIGHT, HUG and POOLE, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Randall Hauser appeals his conviction for conspiracy to possess with intent to distribute and attempted possession with intent to distribute 5000 grams of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1)(A). Hauser argues for reversal on the grounds of outrageous government conduct in securing his indictment, entrapment as a matter of law, and various evidentiary errors during trial. The United States cross appeals Hauser's sentence under the Sentencing Guidelines, arguing that the district court improperly departed downward from the applicable guideline range.
 
 
 3
 The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We affirm both the conviction and the sentence.
 
 I.
 
 4
 Hauser argues that his indictment ought to be reversed because the Government employed outrageous conduct in securing it, thereby violating the requirements of Due Process. Specifically, Hauser asserts that the Government's confidential informant, Stuart Gottlieb, coerced Hauser into entering the subject drug transaction. The district court rejected this argument in a pretrial motion, holding that Gottlieb was not a government agent when he contacted Hauser and began to arrange the transaction.
 
 
 5
 We find that the court's conclusion is amply supported by the record. A claim of outrageous government conduct requires, by definition, conduct by a government agent. In this case, Gottlieb contacted Hauser on his own, Hauser apparently expressed a willingness to enter a drug transaction over the course of several telephone conversations, after which Gottlieb informed the Drug Enforcement Agency (DEA). Gottlieb did not actually assist the DEA until after Hauser had assented to the transaction. Therefore, whatever conduct Gottlieb did or did not employ in securing Hauser's assent to the deal was not employed while Gottlieb was a government agent.
 
 
 6
 Additionally, we note that Gottlieb will not be considered a government agent simply because he may have expected a reward for informing the Government of Hauser's participation in the subject transaction or because he had assisted other federal authorities by providing information in other, unrelated matters. See United States v. Busby, 780 F.2d 804, 806-07 (9th Cir.1986).
 
 
 7
 Hauser asserts that the Government stipulated during the pretrial motion that Gottlieb was its agent at the time and that the issue is therefore foreclosed. We are not persuaded that the Government made such a stipulation. Moreover, the court explicitly held to the contrary. Hauser has not pointed to any evidence which demands our reversal of that holding.
 
 II.
 
 8
 Hauser argues that his conviction should be reversed because he was entrapped as a matter of law. Relying again on the premise that Gottlieb was a government agent, Hauser argues that Gottlieb induced him to enter a drug transaction which he was otherwise not disposed to enter. After receiving instructions on the entrapment defense, the jury apparently rejected it by finding Hauser guilty. For the first time on appeal, Hauser asserts he is entitled to the defense as a matter of law. We disagree.
 
 
 9
 The affirmative defense of entrapment has two elements: (1) government inducement of the crime and (2) the absence of predisposition on the part of the defendant. United States v. Skarie, 971 F.2d 317, 320 (9th Cir.1992).
 
 
 10
 In order to establish the first element as a matter of law, Hauser would have to point to "undisputed evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act by trickery, persuasion or fraud of a government agent." United States v. Hart, 963 F.2d 1278, 1283 (9th Cir.1992) (citation omitted). The evidence of government inducement in this case is far from undisputed. As discussed above, the evidence strongly suggests that Gottlieb was not a government agent when he approached Hauser. We find, therefore, that Hauser is unable to establish the first element as a matter of law.
 
 
 11
 In order to establish the second element as a matter of law, we would have to conclude that "viewing the evidence in the light most favorable to the Government, no reasonable jury could have concluded that [Hauser] was predisposed to commit the charged offenses." Id. (citations omitted). The Supreme Court has noted that where the defendant is simply provided with the opportunity to commit a crime, the "ready commission of the criminal act amply demonstrates defendant's predisposition." Jacobson v. United States, 112 S.Ct. 1535, 1541, 992 U.S.LEXIS 2117 at 17. By itself, the undisputed fact that Hauser produced $110,000 with which to purchase the subject cocaine adequately supports a conclusion that Hauser was predisposed to commit the crime. Given this and other facts, the evidence was not so clear that the jury was required to conclude that Hauser had not been predisposed. We conclude, therefore, that Hauser has not established the second element as a matter of law.
 
 
 12
 Hauser asserts that his case is analogous to two others in which courts have found entrapment as a matter of law, Jacobson and Skarie. We are not persuaded. First, neither of these cases involved disputed questions of government inducement. Second, both involved extraordinary pressure by government agents which was not involved here. In Jacobson, the Supreme Court concluded that the defendant's willingness to commit the crime was the result of 26 months of government efforts, including promotional material from five fictitious organizations and letters from a bogus pen pal. 112 S.Ct. at 1542. In Skarie, the Government's confidential informant used graphic threats of violence against the defendant and her family to induce her participation in a drug deal. 971 F.2d at 321. In our view, none of Hauser's allegations implicate the kind of extraordinary activities involved in the cited cases.
 
 III.
 
 13
 Hauser argues that his conviction should be reversed because the district court excluded testimony of Hauser's statements to three witnesses which would have demonstrated that Hauser was in poor financial shape when approached by Gottlieb, that he was committed to staying away from drug dealing, and that he entered the drug transaction because Gottlieb persuaded him to do so. Hauser purportedly sought introduction of this evidence to support the proposition that he was not predisposed to commit the crime. Though the evidence would have been hearsay, Hauser insists that the evidence should have been admitted under the state of mind exception, Fed.R.Evid. 803(3).
 
 
 14
 We will reverse a district court's evidentiary ruling "only where there has been an abuse of discretion, and only if the evidentiary error would have more likely than not affected the verdict." United States v. Faust, 850 F.2d 575, 585 (9th Cir.1988). We conclude that there has been no such abuse of discretion.
 
 
 15
 During the direct examination of witness Nicole Moisan, Hauser's attorney never attempted to elicit the testimony which Hauser now claims was excluded. There were no objections or offers of proof during her examination. During the direct examination of witness/co-defendant Marvin Wood, the Government's attorney made several hearsay objections to testimony concerning an agreement between Wood and Hauser. However, as with Moisan, Hauser's attorney never attempted to elicit from Wood the testimony which Hauser now claims Wood would have provided.
 
 
 16
 Only during the direct examination of Douglas Steven Hauser did Hauser's attorney actually seek the admission of testimony which Hauser now claims was improperly excluded: statements by Hauser expressing a desire to stay away from cocaine. In determining whether statements will qualify under the state of mind exception, a court must consider "contemporaneousness, chance for reflection, and relevance." Faust, 850 F.2d at 585. Other than offering the content of the statements, Hauser's attorney offered no details about the circumstances under which these statements were made. Given the limited foundation provided to the court, we cannot conclude that the court abused its discretion by denying admission of the hearsay.
 
 IV.
 
 17
 Hauser argues that the district court erred by allowing the Government to admit evidence of various past "bad acts" which Hauser committed. Hauser does not rely upon a rule of evidence, but rather Local Rule 48(B). This rule requires the Government to provide the defendant notice before introducing bad act evidence pursuant to Fed.R.Evid. 404(b), if the defendant has given notice that it will pursue an entrapment defense. Hauser contends that because he gave adequate notice of his entrapment defense, the court ought not have admitted the prior bad acts evidence of which he did not receive notice.
 
 
 18
 Hauser cites several instances in which this bad act evidence was admitted. In only one instance did Hauser's attorney object--when Hauser was questioned about a false Canadian driver's license he had once used. The court overruled the objection but not on the basis of Fed.R.Evid. 404(b). Rather, the court responded: "Counsel, your witness has taken the stand and this is proper cross-examination. I will instruct the jury what they can use as information. I'll give a limiting instruction." In a subsequent order, the court underscored that the testimony had been admitted to attack the defendant's credibility.
 
 
 19
 "The district court 'has a large measure of discretion in interpreting and applying' its own local rules." Los Angeles Memorial Coliseum Comm'n v. City of Oakland, 717 F.2d 470, 473 (9th Cir.1983) (quoting Lance, Inc. v. Dewco Services, Inc., 422 F.2d 778, 784 (9th Cir.1970)). Even if the testimony was theoretically admissable under Fed.R.Evid. 404(b), it was reasonable for the court to identify other grounds and conclude that its local rule did not apply. We conclude, therefore, that the district court did not abuse its discretion by admitting the evidence without notice. Likewise, those admissions of alleged bad act evidence which are disputed for the first time on appeal, do not constitute plain error.
 
 V.
 
 20
 Hauser argues that the court erred by admitting a number of telephone conversations between himself and Gottlieb. The conversations were recorded by Gottlieb at the behest of the DEA. Hauser contends that it was unfair to allow the Government to admit tape recordings of a few incriminating conversations, when there were dozens of others which were not recorded and which would have been exculpatory.
 
 
 21
 The only authority cited by Hauser is an Eighth Circuit case which suggested that a tape recording with substantial, inaudible portions might be excludible. United States v. Bell, 651 F.2d 1255, 1259 (8th Cir.1981). Hauser argues that like a partially audible audio tape, the jury in his case "heard" only some of many conversations which took place between him and Gottlieb. Hauser concludes that the jury therefore may have gotten an incorrect or confused impression.
 
 
 22
 We are not persuaded. The Bell case actually affirmed the district court's admission of recordings which were of poor quality. More importantly, the analogy is simply inapt. Bell discussed the problem of recordings whose substance could not be ascertained reliably--not that audible portions might be incriminating and inaudible portions exculpatory. Hauser, moreover, cited no authority which justifies the exclusion of persuasive, incriminating evidence simply because the defense is unable to produce evidence which might rebut it. We conclude, therefore, that the court committed no error by admitting the tape recordings.
 
 VI.
 
 23
 We have carefully considered each of the additional arguments presented by Hauser in his pro se, supplemental brief. We conclude that all of them lack merit.
 
 VII.
 
 24
 The Government challenges the sentence which the district court imposed on Hauser. The district court determined that Hauser was a career offender under section 4B1.1 of the Sentencing Guidelines and the applicable guideline sentence was 292-365 months. Departing on the ground that the career offender enhancement overstated Hauser's criminal history, the district court sentenced Hauser to 188 months. The Government argues on appeal that the district court based its departure on impermissible grounds, failed to specifically explain its reasons for departing, and departed unreasonably.
 
 
 25
 Departure from the career offender enhancement is permissible where the "defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3, policy statement; United States v. Lawrence, 916 F.2d 553, 554-55 (9th Cir.1990).
 
 
 26
 During Hauser's sentencing hearing, the court stated: "I would agree that being labeled as a career criminal overstates the situation that you are facing today. I will depart from the career criminal status, to take into consideration what the guidelines would have been not for the career criminal status...." In light of the section 4A1.3 policy statement and our decision in Lawrence, we are satisfied that the court departed on permissible grounds.
 
 
 27
 Arguing that the district court's explanation of its departure was not sufficient, the Government cites United States v. Wells, in which we held that a court did not satisfy its obligation to explain an upward departure by providing "a general recitation that the defendant's criminal history category or offense level underrepresents, in the sentencing court's opinion, the defendant's criminal record or the seriousness of the charged offense." 878 F.2d 1232, 1233 (9th Cir.1989).
 
 
 28
 After reviewing the transcript of the sentencing hearing, however, we conclude that the court's explanation was more than a "general recitation." In justifying its sentence, the court stated "I would agree that being labeled as a career criminal overstates the situation." It is patently obvious to us that by making this statement, the court was assenting to those grounds for departure from the career criminal category which had just been articulated by Hauser and his counsel. Those explanations included the unlikelihood that Hauser would repeat his offense, his lack of anti-social attitudes, his non-violent character, and the length of time since his last offense. We conclude, therefore, that the court's explanation was sufficient. We also conclude that the court's departure was reasonable given the circumstances.
 
 VII.
 
 29
 Hauser's conviction and sentence are both AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3